UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
CARMEN ROJAS,                           :
                       Plaintiff,       :
                                        :
             -v-                        :        09 Civ. 6698 (DLC)
                                        :
MICHAEL J. ASTRUE, Commissioner of      :            OPINION
Social Security                         :           AND ORDER
                       Defendants.      :
                                        :
----------------------------------------X

Appearances:

For the plaintiff:
Gary J. Gogerty
Drake, Loeb, Heller, Kennedy, Gogerty, Gaba & Rodd PLLC
555 Hudson Valley Ave., Suite 100
New Windsor, NY 12553

For the Commissioner of Social Security:
Preet Bharara, United States Attorney
Leslie A. Ramirez-Fisher, Assistant U.S. Attorney
Southern District of New York
86 Chambers Street, 3rd Fl.
New York, NY 10007

DENISE COTE, District Judge:

        Plaintiff Carmen M. Rojas ("Rojas") brings this action

pursuant to § 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), seeking review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her

eligibility for Supplemental Security Income ("SSI") benefits as

provided for under the Social Security Act ("the Act").  The

Commissioner has moved for judgment on the pleadings affirming

his final decision.  The petitioner has cross-moved for judgment

on the pleadings asserting the Commissioner's decision was based on legal error and is not supported by substantial evidence. For the following reasons, the Commissioner's motion is granted and the plaintiff's motion is denied.

BACKGROUND

The following facts are taken from the administrative record and are undisputed.  The plaintiff was born in 1950 and has a high school education.  She was fifty-six years old at the alleged onset of her disability in 2006, which she describes as severe depression and nervousness.  Rojas previously worked from 1982 to 2006 as an unpaid caretaker for her elderly mother and for the children of friends and family.  She also worked as a sales clerk in the shoe department at Wal-Mart and at another retail store, with some interruptions, for a total of about twenty years between 1969 and 1998.  When the plaintiff's mother passed away in March 2006, she babysat others' children less, until she stopped working entirely in August 2006 due to depression.

I. Medical Record

In August 2006, a nephew came to Florida, where Rojas had been living and taking care of her mother, and took her back to New York with him because she was having trouble caring for herself.  He took her to Arden Hill Hospital where she was admitted as an inpatient to the Behavioral Care Unit on an

involuntary basis.  She complained of lack of appetite, poor sleep, depression, anxiety, and hopelessness.  She was diagnosed with major depression and a Global Assessment of Function ("GAF") of 20.[1]  She was put on a prescription medication regimen including clonazepam, Abilify, lithium, and Zoloft, to which she responded "very well," and was discharged two weeks later.  When discharged, her mood was euthymic (normal, neither depressed nor manic), her diagnosis was major depressive disorder, and her GAF was 55.[2]

Rojas began outpatient treatment in September 2006, at Occupations, Inc.  There she was seen approximately once a month by her treating psychiatrist, Dr. Kathpalia.  She was diagnosed with a mood disorder, not otherwise specified ("mood disorder NOS") in November 2006, and a GAF of 60.  Her treatment notes show that she experienced no side effects from her medications, which were gradually adjusted and reduced, with some of the prescriptions being eliminated.  Rojas also saw a therapist

---

[1] GAF refers to the individual's overall level of functioning, and is assessed using the GAF scale, which provides ratings in ten ranges.  Higher scores reflect greater functioning.  A GAF of 11-20 reflects some danger of harming self or others, occasional failure to maintain minimal personal hygiene, or gross impairment in communication.  Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 27, 32, 34 (4th ed. text rev. 2000).

[2] A GAF in the range of 51-60 indicates moderate symptoms (such as flat affect and circumstantial speech or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning.  DSM-IV-TR 34.

named Elizabeth Raun ("Raun") at Occupations approximately every
two weeks.  Through the end of 2006, Raun's treatment notes
indicate good progress and improvement in Rojas's mood stability
and coping skills, physical appearance, and anxiety, including
that she was more active and social.

In March 2007, Dr. Minola, a state agency psychiatrist,
reviewed Rojas's records in order to determine Rojas's residual
functional capacity ("RFC")[3] for the purpose of her SSI claim.
He found that her activities of daily living were mildly
restricted; that she had mild difficulties maintaining social
functioning; that she had moderate difficulty in maintaining
"concentration, persistence, or pace;" and had not had any
episodes of deterioration.  Dr. Minola determined that Rojas was
moderately limited in her ability to remember locations and
work-like procedures and to understand and remember detailed
instructions, but was not limited in her ability to understand,
remember, and carry out short and simple instructions.  He found
that she was moderately limited in her ability to carry out
detailed instructions, maintain attention and concentration for
extended periods, maintain a routine without special
supervision, or work in coordination with others without being
distracted by them.  She was not significantly limited in her

---

[3] "Residual functional capacity" is what a person is still
capable of doing despite limitations resulting from physical and
mental impairments.  20 C.F.R. § 416.945(a).

social interactions with the public, peers, coworkers, or
supervisors.  In sum, Dr. Minola determined that Rojas "appears
to be able to understand[,] remember[,] and carry out simple
tasks in a low stress environment and to relate to peers and
supervisors in a work setting."

From March to July 2007, Raun's treatment notes show a
downturn, with Rojas complaining of increased anxiety and
depressed mood.  Dr. Kathpalia's treatment notes also indicate
an anxious and sometimes depressed mood with symptoms of
anxiety.  To Raun, Rojas expressed agitation and anxiety over
being dependent on her nephew and fearing she would not regain
independence.  By late spring and early summer 2007, however,
Rojas was once again demonstrating progress and improved mood
and coping skills.  In July, Rojas indicated that she was
feeling "more empowered and good about [her]self."  By August,
Dr. Kathpalia's treatment notes indicate a normal mood.  In the
fall and early winter of 2007, Rojas traveled to Florida and
Georgia to visit family.  Raun's notes indicate some agitation
and frustration by Rojas due to the uncertainty of receiving
benefits and gaining independence, and some fear about returning
to work, but in February 2008, reported feeling a little better
and less depressed and hopeless.

In February 2008, Dr. Kathpalia responded to a functional
capacity questionnaire for Rojas.  He stated that she had a

chronic mood disorder and a history of psychosis and
hallucinations as well as depression and anxiety.  He stated
that Rojas was unable to travel alone by bus or subway because
she had difficulty following multi-step directions due to poor
memory, poor concentration, and being anxious.  He indicated
that Rojas had a marked limitation in her activities of daily
living, marked limitation in maintaining social functioning, and
extreme limitation with respect to deficiencies of
concentration, persistence or pace resulting in failure to
complete tasks in a timely manner.  She had extreme limitation
in her ability to understand, remember, and carry out
instructions, as well as marked limitations in her ability to
respond appropriately to supervision or coworkers.  She also was
extremely limited with respect to her ability to respond to
customary work pressures, to satisfy an employer's normal
quality expectations, and to perform even simple tasks on a
sustained basis in a full-time work setting.  Dr. Kathpalia also
indicated that Rojas had experienced one or two episodes of
deterioration.  In sum, Dr. Kathpalia commented that Rojas had a
chronic mood disorder and was "completely disabled and unable to
work."  She is often confused, frustrated, tearful and easily
overwhelmed.

In March 2008, Raun's treatment notes indicated that Rojas
had moved into her own apartment and "was happy" about it,

although she continued to suffer from anxiety, and had
"difficulty balancing worry with living her life."  In June
2008, Raun indicated that Rojas "continues to get anxious to
[the] point i[t] affects her health."

II.  Procedural History

Rojas applied for SSI benefits on December 13, 2006,
alleging a disability starting on August 31, 2006.  She alleged
that she was disabled due to nervousness and a severe, major
depression that limited her ability to work because of
difficulty concentrating, anxiety in social settings, and
general fatigue.  She indicated that she could not lift things
or stand for long periods of time.  She claimed that she was
capable of taking public transportation, handling money, and
caring for her personal needs without help, except that she
sometimes forgot to take her medication.  Her claim was
initially denied on March 14, 2007.  She timely requested a
hearing before an administrative law judge on May 14, 2007.

The hearing before Administrative Law Judge James B. Reap
(the "ALJ") took place on May 13, 2008.  At the hearing, Rojas
testified that she suffers from depression and is unable to
work.  She said that she lives alone in her own apartment.  For
activities, she reads the newspaper, books, and the Bible, makes
crafts with beads, and works crossword puzzles.  She testified
that she watches movies and television and can generally follow

the plot of these programs, but sometimes has to read things in
books twice because she has trouble focusing.  She said that
whenever she could (because she was not able to drive) she goes
out to church and to visit friends and family.  She socializes
over the telephone with family, follows an exercise program on
television, and sometimes takes walks outside.  She also does
household chores like laundry, preparing meals, and sweeping.
She said that if it were available, she'd be able to use public
transportation, and that she attends her medical appointments
alone.  Rojas testified that her job at Wal-Mart in the shoe
department required to her work standing up and that customers
generally helped themselves there.  From the transcript of the
hearing, it seems that Rojas grew upset when discussing the
onset of her depression and her mother's death, and the ALJ
interrupted his questioning to comfort her.  She testified that
she saw a therapist twice a month and a physician once a month
for her medications.

     The ALJ issued his decision on September 3, 2008, and found
that Rojas was not disabled within the meaning of the Act since
the date of her application, and was therefore not entitled to
benefits.  Rojas requested review from the Appeals Council, but
it denied her request for review on June 9, 2009, making the
ALJ's decision the final decision of the Commissioner.  On July
28, Rojas filed her complaint with the district court.  The

parties' cross-motions for judgment on the pleadings were fully
submitted on March 5, 2010.

DISCUSSION

I. Standard of Review and Statutory/Regulatory Framework

In reviewing a decision of the Commissioner, a court may
"enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
[Commissioner], with or without remanding the cause for a
rehearing."  42 U.S.C. § 405(g).  A determination of the ALJ may
be set aside only if it is based upon legal error or is not
supported by substantial evidence.  Rosa v. Callahan, 168 F.3d
72, 77 (2d Cir. 1999).  "Substantial evidence" is "more than a
mere scintilla.  It means such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."
Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting
Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Furthermore,
if the findings of the Commissioner as to any fact are supported
by substantial evidence, those findings are conclusive.  Diaz v.
Shalala, 59 F.3d 307, 312 (2d Cir. 1995).  "Where there is
substantial evidence to support either position, the
determination is one to be made by the factfinder."  Alston v.
Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

The Commissioner will find a claimant disabled under the
Act if the claimant demonstrates the "inability to engage in any

9

substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or that has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C.
§ 423(d)(1)(A).  The claimant's impairment must be "of such
severity that he is not only unable to do his previous work but
cannot, considering his age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy."  Id. § 423(d)(2)(A).  The
disability must be "demonstrable by medically acceptable
clinical and laboratory diagnostic techniques."  Id.
§ 423(d)(3).

The Commissioner uses a five-step process when making
disability determinations.  See 20 C.F.R. §§ 404.1520 & 416.920.
The Second Circuit has described the process as follows:

> First, the Commissioner considers whether
> the claimant is currently engaged in
> substantial gainful activity.  Where the
> claimant is not, the Commissioner next
> considers whether the claimant has a "severe
> impairment" that significantly limits her
> physical or mental ability to do basic work
> activities.  If the claimant suffers such an
> impairment, the third inquiry is whether,
> based solely on medical evidence, the
> claimant has an impairment that is listed in
> 20 C.F.R. Part 404, Subpart P, Appendix 1.
> Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether,
> despite the claimant's severe impairment,
> she has the residual functional capacity to
> perform her past work.  Finally, if the

> claimant is unable to perform her past work,
> the burden then shifts to the Commissioner
> to determine whether there is other work
> which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183-84 (2d Cir. 2003)

(citation omitted).

A claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden in the final step.  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).  For evaluating the severity of mental impairments, there are additional regulations that require the implementation of a "special technique" that involves rating, and documenting, the degree of functional limitation resulting from the impairments in accordance with "four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir. 2008) (citing 20 C.F.R. § 404.1520a(c)(3)).

With respect to the determination of the nature and severity of a claimant's impairment,

> [t]he SSA recognizes a "treating physician"
> rule of deference to the views of the
> physician who has engaged in the primary
> treatment of the claimant.  According to
> this rule, the opinion of a claimant's
> treating physician as to the nature and
> severity of the impairment is given
> "controlling weight" so long as it is well-
> supported by medically acceptable clinical
> and laboratory diagnostic techniques and is

not inconsistent with the other substantial
evidence in [the] case record.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citation

omitted).  In general, "the opinion of the treating physician is

not afforded controlling weight where . . . the treating

physician issued opinions that are not consistent with other

substantial evidence in the record, such as the opinions of

other medical experts."  Halloran, 362 F.3d at 32 (citation

omitted).

> An ALJ who refuses to accord controlling
> weight to the medical opinion of a treating
> physician must consider various "factors" to
> determine how much weight to give to the
> opinion.  20 C.F.R. § 404.1527(d)(2).  Among
> those factors are: (i) the frequency of
> examination and the length, nature and
> extent of the treatment relationship; (ii)
> the evidence in support of the treating
> physician's opinion; (iii) the consistency
> of the opinion with the record as a whole;
> (iv) whether the opinion is from a
> specialist; and (v) other factors brought to
> the Social Security Administration's
> attention that tend to support or contradict
> the opinion.  The regulations also specify
> that the Commissioner "will always give good
> reasons in [her] notice of determination or
> decision for the weight [she] give[s]
> [claimant's] treating source's opinion.

Id. (citation omitted).  After considering these factors, the

ALJ must "comprehensively set forth [his] reasons for the weight

assigned to a treating physician's opinion."  Id. at 33.

Failure to provide good reasons for not crediting the opinion of

a claimant's treating physician is a ground for remand.

<u>Burgess</u>, 537 F.3d at 129.  "Genuine conflicts in the medical evidence," however, "are for the Commissioner to resolve." <u>Veino v. Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002).

In making such an evaluation, an ALJ must also "carefully consider the individual's statements about symptoms" along with all of the other evidence in the case record, and must make findings about the credibility of the claimant's statements. <u>See</u> Evaluation of Symptoms in Disability Claims:  Assessing the Credibility of an Individual's Statements, Soc. Sec. Ruling 96-7p, 61 Fed. Reg. 34,483, 34,484 (July 2, 1996).  "An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  <u>Id.</u> An ALJ will consider the following factors when evaluating a claimant's symptoms: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has received for relief of his pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; (6) any measures the claimant uses or has used to relieve his pain or

other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3).  Conclusory findings of a lack of credibility will not suffice; rather, an ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  Soc. Sec. Ruling 96-7p, 61 Fed. Reg. at 34,484.

A finding of credibility made by an ALJ is entitled to deference by a reviewing court.  The ALJ, "after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility . . . may decide to discredit the claimant's subjective estimation of the degree of impairment." Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999) (citation omitted).  As with any finding of fact, "[i]f the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain."  Perez v. Barnhart, 234 F. Supp. 2d 336, 341 (S.D.N.Y. 2002) (quoting Aponte v. Sec'y Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).  Thus, a determination of credibility will only be set aside if it is not set forth "with sufficient specificity to enable [a reviewing

14

court] to decide whether [it] is supported by substantial
evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir.
1984).

II.   Evaluation of the ALJ's Opinion

At the first three steps of the process, the ALJ determined
that Rojas had not engaged in substantial gainful activity since
the date she applied for benefits, and that her severe
impairment was mood disorder NOS, which did not meet or
medically equal a listed impairment.  These findings are not
challenged by either party.  The ALJ then determined that Rojas
had the RFC to perform a full range of simple, unskilled work at
all exertional levels.  He concluded that she was able to
perform her past work as a sales clerk, and therefore that she
was not disabled under the meaning of the Act.

The Commissioner's decision denying Rojas SSI benefits was
supported by substantial evidence and did not contain legal
error.  Rojas makes many arguments in favor of reversal, none of
which is ultimately successful.  The medical record, taken as a
whole, shows that after her mother's death in 2006, Rojas became
depressed.  She was treated with a variety of medications in
August 2006, to which she responded well.  Rojas had a brief
relapse between March and July, 2007, but again recovered.  The
questionnaire completed by her treating psychiatrist in February
2008 to assist in her application for disability benefits paints

a bleak picture of Rojas's mental health that is quite at odds with the treatment notes from 2006 to 2008.

First, Rojas argues that the ALJ did not follow the "treating physician rule" in rejecting Dr. Kathpalia's evaluation and improperly chose to rely on those portions of her medical record that supported a denial of benefits. The ALJ explained that he "reject[ed] the treating source opinion [by Dr. Kathpalia of marked and extreme limitations], as it is wholly inconsistent with and poles apart from his own treating notes and Ms. Raun's therapy notes, which overall, show, some depressed and anxious mood with occasional anxiety." The ALJ explained:

> All in all, LSMW Raun's and Dr. Kathpalia's notes from October 2006 through June 2008 completely belie the doctor's latest assessment, especially in thought processes; thought content; perceptual disturbances; judgment and daily activities; social situations; insight; orientation and memory; and attention span and concentration. . . . Dr. Kathpalia's opinion is not supported by the substantial evidence of record.

Based on this finding and "the claimant's wide range of activities, which certainly show a much greater residual functional capacity than alleged and assessed," the ALJ rejected Dr. Kathpalia's assessment and gave "greatest weight" to Dr. Minola's evaluation that Rojas was able to perform simple tasks

in a low stress environment and to relate to peers and supervisors in a work setting.

The ALJ's determination that Dr. Kathpalia's February 2008 assessment was not supported by the substantial evidence of the record is a well-supported finding; his decision to reject the assessment is supported by substantial evidence.  Dr. Kathpalia's February 2008 conclusion was inconsistent with not only Raun's treatment notes and Dr. Minola's evaluation, but also with Dr. Kathpalia's own treatment notes.  This provides "good reason" to reject his opinion.  Halloran, 362 F.3d at 32 (citation omitted).  With respect to how much weight to give Dr. Kathpalia's February 2008 opinion, the ALJ decision essentially addressed each of the "factors" which 20 C.F.R. § 404.1527(d) requires an ALJ to consider.  See Halloran, 362 F.3d at 32.  The ALJ noted that Dr. Kathpalia was a psychiatrist, and therefore a specialist; considered treatment notes spanning the entire period that Dr. Kathpalia treated Rojas; and considered the evidence to support Dr. Kathpalia's assessment.  The ALJ's finding that Dr. Kathpalia's opinion was not supported by the substantial evidence because it was inconsistent with the record as a whole is amply supported.

Rojas next argues that the ALJ failed to make a reasoned finding on Rojas's credibility.  The ALJ compared Rojas's allegation that she was disabled and could not work with the

17

daily activities to which she testified at her hearing, and determined that her "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent that they are inconsistent with the [RFC] assessment for the reasons explained below."  The ALJ then discussed Rojas's progress in treatment, her demeanor at her face-to-face interview at the local Social Security office, her consistently positive GAF, and the treatment notes from both Raun and Dr. Kathpalia.  These reasons take into account the appropriate factors for assessing credibility and are supported by substantial evidence.  See 20 C.F.R. § 416.929(c)(3).

Rojas next argues that the Commissioner did not sufficiently develop the record to make a finding of fact as to the physical and mental demands of her past job as a sales clerk in the shoe department.  "Because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999).  By regulation, an ALJ

> shall inquire fully into the matters at
> issue and shall receive in evidence the
> testimony of witnesses and any documents
> which are relevant and material to such
> matters.  If the administrative law judge
> believes that there is relevant and material
> evidence available which has not been
> presented at the hearing, he may adjourn the
> hearing or, at any time, prior to the filing

of the compensation order, reopen the
hearing for the receipt of such evidence.

20 C.F.R. § 702.338.  See Burgess, 537 F.3d at 128.  The ALJ
elicited testimony from Rojas about her past job as a sales
clerk, learned that it required Rojas to stand up most of the
time and that customers generally helped themselves, and
consulted the Dictionary of Occupational Titles to learn that
the position of sales attendant is an unskilled position with
light exertional demands.  The ALJ concluded that because Rojas
was capable of performing simple, unskilled work at any
exertional level, she could perform that sales attendant job as
she had in the past and as it is generally performed in the
economy.  While the ALJ changed his course of questioning
regarding the requirements of Rojas's past work when she became
upset during the hearing, he made sufficient findings of fact
regarding both the physical and mental requirements of the job
to determine that her RFC would allow her to return to the job
of sales clerk.  This determination, and the ALJ's explanation
for it, is supported by substantial evidence.

Rojas makes a number of other arguments, including that the
ALJ: failed to develop the record adequately with respect to her
non-exertional impairments; should have used a vocational expert
to determine Rojas's "occupational base;" used leading questions
to elicit the testimony that he wanted; inadequately supported

his findings; and set out his analysis of Rojas's RFC in insufficient detail.  They have all been considered and been found to lack merit.  The ALJ's determination that Rojas had the RFC to perform her past work as a sales clerk is supported by substantial evidence, and is affirmed.

CONCLUSION

The Commissioner's January 15 motion for judgment on the pleadings is granted.  The plaintiff's January 20 motion for judgment on the pleadings is denied.  The Clerk of Court shall close the case.

SO ORDERED:

Dated:     New York, New York
           March 22, 2010

                                    DENISE COTE
                          United States District Judge

20

COPIES SENT TO:

Gary J. Gogerty
Drake Loeb Heller Kennedy Gogerty Gaba & Rodd
PLLC
555 Hudson Valley Avenue
Suite 100
New Windsor, NY 12553

Leslie Ramirez-Fisher
U.S. Attorney's Office - Civil Div.
86 Church Street
New York, NY 10007